## KENDALL *v.* DAVIS.

Decided January 16, 1892.

1. *Possession—Notice—Equitable title.*

Continuous possession by the equitable owner, for the period of twelve months, of land which he occupied as a homestead is sufficient to put upon notice persons dealing with the holder of the legal title.

2. *Usury—Estoppel.*

A land-owner who has agreed to hold his land as a tenant and pay rent for its use to one who holds the legal title as security only for a debt is not estopped to plead that the debt is usurious, and the security consequently void.

3. *Usurious payments—Recovery.*

Usurious payments not shown to exceed the principal and lawful interest cannot be recovered.

APPEAL from *Hempstead* Circuit Court in chancery.

PAUL JONES, Special Judge.

This is an action of unlawful detainer by John H. Davis against W. E. Kendall for possession of two lots in the town of Hope. The complaint charges Kendall with holding over after expiration of his term of lease, and with being in default for rents.

Defendant denied plaintiff's ownership, and, by way of cross-bill, alleged that plaintiff held the legal title to the land as security for a usurious loan, upon which he had made certain payments. He asked that the title be vested in him, and that he recover the usurious payments.

The cause was transferred to the equity docket. From the evidence it appears that Kendall purchased the land from Patrick Donnelly. Sometime in 1878 or 1879 he applied to B. L. Rye to borrow $200 to pay for the land, of which he was then in possession as his home. Rye agreed to make the loan at 2½ per cent. interest per month, upon condition that Donnelly would make a conveyance to him of the lots. The loan was made and the deed executed to Rye on July 30, 1880. Subsequently, on November 1, 1880, Davis paid Rye $200, the amount due by Kendall, and took

a deed to the land.   Kendall continued in possession of the land and paid Davis $5 per month.   Kendall contends that Davis loaned him the $200; Davis insists that he bought the land and rented it to Kendall.   Upon this point the evidence is stated in the opinion.   On December 3, 1883, Davis executed to him a title bond which, after the usual formal obligation, contained the following condition, viz.:

"The condition of the above obligation is this: Whereas, the said W. E. Kendall has this day purchased of the said John H. Davis the following tract or parcel of land situated in the county of Hempstead, State of Arkansas, and described in the survey" (here follows a description of the lots), "and agreed to pay therefor the sum of $180 in the following manner: On the 1st day of December A. D., 1884, in one note for that amount, bearing even date with this instrument.   Said note is given for payment for the above described lots or parcels of land; and if said note is not paid on that date, the said W. E. Kendall agrees to surrender this instrument and give the said John H. Davis, his heirs or assigns, peaceable possession of the property described.   The said W. E. Kendall also agrees to pay to the said John H. Davis, his heirs or assigns, $5 per month rent for the above described property, the rent to be paid monthly by the 10th day of each month; if the rent is not paid by the time specified, this obligation is void.   Now, if the said John H. Davis, his heirs or assigns, shall, on the punctual payment of said note and all taxes assessed on said land, and the surrender to them of this instrument, convey, or cause to be conveyed, to the said W. E. Kendall, his heirs or assigns, the above described premises, with warranty of title, this obligation to be void; otherwise to be in full force and effect."

The court held that the conveyance from Donnelly to Rye was in effect a mortgage to secure a usurious loan; that the deed to Davis was a conveyance in fee simple, and not a mortgage; that Kendall, having induced Davis to purchase the lots, was estopped to insist upon the illegality of the

consideration.   Decree was entered accordingly, from which Kendall appealed.

*J. D. Conway* and *Dan W. Jones* for appellant.

The bond for title being unambiguous must be construed according to its terms.   39 Ark., 560.   The *rent* is a mere subterfuge to cover *interest.*   53 Ark., 345 ; 47 Ark., 287 ; 53 *id.,* 271 ; *ib.* 454.   The act of 1887, p. 50, is retrospective, and applies to all usurious contracts.   53 Ark., 271 ; *ib.,* 454.   Being usurious, Kendall should have judgment for $280 paid under a usurious contract.   41 Ark., 331.

HEMINGWAY, J.   The court, found, in accordance with the evidence, that the equitable title to the land was in Kendall, and that Davis's grantor held the legal title as security for a usurious loan.   But it found that Davis was induced by Kendall to make the purchase, and we find no evidence to support this finding.   The contrary is distinctly stated by Davis, who in his deposition says that he never spoke to Kendall on that subject until after he made the purchase. He nowhere indicates that he made the purchase in reliance upon anything done or said by Kendall, and the evidence is conclusive that he did not.   As he purchased from one who did not own the land but held the legal title only as security for a debt, he acquired no more than his grantor had, unless there is something in the conduct of the appellant to enlarge his acquisition.   To this end two matters are relied upon.

1. Possession as notice of equitable title.

Kendall caused the legal title to be conveyed to Davis's grantor, and, as it may be argued, clothed him with the indicia of absolute ownership, in the faith of which Davis was warranted in purchasing from him ; without considering any other answer that might be made to this it is sufficient to say that when Davis's grantor was invested with the legal title, Kendall was occupying the land as his homestead, and that he continued so to occupy it for a long while, a year at least, before Davis purchased.   This long continuing possession was notice to the world of his rights, and persons deal-

ing with the holder of the legal title, without inquiring of him, did so at their peril. *Turman* v. *Bell*, 54 Ark., 273.

After the conveyance to Davis, Kendall made payments to him as rent for the land, and at last took an instrument from him, in form a bond for title, containing a covenant to pay rent until a deed should be made to him as therein provided, and this is the other matter relied upon to enlarge Davis' acquisition. It is sufficient to say of it that it was an agreement between the parties, growing out of and dependent upon the usurious transaction, and that no rights can be predicated upon it. Tyler on Usury, p. 402. On a similar state of case we thus ruled in *Brakefield* v. *Halpern*, 53 Ark., 345 ; and to hold otherwise would be to say that a party may bind himself by an estoppel where his express agreement would be ineffectual because prohibited by law.

*2. No estoppel to plead usury.*

The appellant claims that he is entitled to recover all sums paid by him on the usurious debt. The rule of common law was that a party who paid excessive interest might recover the excess in an action for money had and received, but that sums paid on the principal and lawful interest were not recoverable. Tyler on Usury, p. 421 *et seq.* The distinction is ascribed to the rule that the law will aid a party to recover money paid by him, where the payment was obtained by coercion or undue advantage, but not where it was made voluntarily ; for the law presumes that payments forbidden by law, for the protection of the payer, were obtained by coercion and undue advantage ; but where they were made upon a debt justly due though not legally enforcible, the presumption is that they were voluntary and made in the discharge of a moral obligation. Tyler on Usury, p. 422 *et seq* ; 15 Alb. L. J., 462. The common law prohibited the collecting of only excessive interest, and contained no rule against the collecting of the principal and lawful interest, even upon a usurious contract ; on the contrary, it recognized the existence of the moral obligation resting upon the debtor, and courts of equity in view of such obligation re-

*3. Whether usurious payments may be recovered.*

S C—21

fused relief against the usurious contract except upon the condition that the principal and lawful interest be paid.

The appellant does not show the dates or amounts of payments made by him, and we cannot find that they exceeded the principal and lawful interest; he therefore fails to bring himself within the rule stated, if it prevails in this State—a question which we need not determine.

The statutes of the State contain no express provision with reference to the recovery of money paid on usurious contracts; and we see nothing in them to enlarge the common law rule, as above stated, if it is preserved. They prohibit the taking of excessive interest; and while they provide that all contracts for excessive interest shall be entirely void and not enforcible in the courts, they nowhere prohibit the collection of the principal and lawful interest; and neither the party paying, nor the party receiving, the same violates the letter or spirit of any law. Such payment is not only not prohibited by the statutes of the State, but has been, since their enactment, recognized as a moral duty, for the courts of equity, prior to the act of 1887, following the rule in England, declined to grant affirmative relief against them, except upon the payment of the principal and lawful interest. As there is nothing in the statutes to prohibit such payments, we think they should be treated as voluntary, and held not to be recoverable.

There was no error in the court's judgment in this regard, but the court did err in finding that the appellant was estopped to assert his equitable right to the land or to demand that the legal title be vested in him.

The judgment will be reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.