Russell C. CHERRY et al., Appellants,

v.

Hatto M. BERG et al., Appellees.

No. 799.

Court of Civil Appeals of Texas, Corpus Christi.

April 18, 1974.

Oscar Cavazos, Raymondville, Merrill W. Russell, Jr., Greenwood & Russell, Harlingen, for appellants.

Marion J. Borchers, New Braunfels, for appellees.

## OPINION

NYE, Chief Justice.

This is a usury case. Plaintiffs Hatto M. Berg and Atley M. Berg brought suit to declare that a certain promissory note was usurious. They sought in their suit to have all of the interest payments made by them applied to the principal debt; cancellation of the indebtedness; return of the moneys paid into the registry of the court representing the balance of the note and interest pending a final determination of their cause; release and cancellation of the lien securing the note; and judgment for penalty, interest and attorney fees. The case was tried before a jury, and based on a partial jury verdict, the trial court rendered judgment for the plaintiffs. The defendants appeal.

On or about August 28, 1958, the plaintiffs borrowed from Lourana Cather Cherry the sum of $25,000.00. The plaintiffs executed a note dated August 28, 1958, in the amount of $27,250.00 payable August 1, 1959, and bearing interest at the rate of 6% per annum. The note was secured by a deed of trust lien covering 589.96 acres of land in Cameron County, Texas. At the time when the note was due, Mrs. Cherry's accountant instructed the plaintiffs that they owed her $4,150.00 interest. On August 31, 1959, the plaintiffs issued their check in the amount of $4,150.00 payable to Mrs. Cherry and marked on the check "interest". The evidence showed that the plaintiffs treated such payment as interest and deducted the same as an expense on their Federal Income Tax returns. Mrs. Cherry likewise treated such payment as interest and reported the same as income on her Federal Income Tax return. About a month later the plaintiffs executed a new note in the amount of $25,000.00, representing the exact amount of the principal sum originally borrowed. The note was dated September 27, 1959, and was payable on or before September 1, 1960. The note called for 10% interest and was secured by the same property securing the original note. Thereafter for the next 12 years, by a series of renewal notes, the plaintiffs paid 10% interest and some amounts on the principal, thereby reducing the final note to $16,300.00 which note is the subject matter of this suit. Mrs. Cherry died on September 19, 1969. The defendants, who were her children, inherited the last renewal note from their mother.

The case was submitted to a jury which found that $25,000.00 was the actual amount loaned on the original $27,250.00 note. The jury further found that Russell Cherry, one of the defendants, knew that the sum loaned was $25,000.00. The jury was unable to answer the other issue inquiring whether the defendant Russell C. Cherry knew at the time the loan was made in August of 1958, that the actual sum loaned was $25,000.00.

Several accountants testified during the course of the trial. It was undisputed that all of the interest paid after September 27,

1959, beginning with the second note, was the legal rate authorized by law, that is, 10%, on the second and all subsequent notes. One of the accountants testified that by applying all of the interest paid, at the time it was paid, to the principal sum of the note, the note would have been paid in full in January of 1967. The trial court held that because the original payment ($4,150.00) exceeded 10% interest, the entire transaction was usurious. The trial court entered judgment, the effect of which was: to allow interest payments to be applied to the principal debt until the same was extinguished; to double the amount of interest paid during the two year period prior to the filing of the suit;[1] to allow attorney fees in the amount of $2,960.00, and release of the lien against the property. At the time the plaintiffs filed their lawsuit against the defendants, they paid into the registry of the court the exact amount of money left owing on the note plus the accrued interest. This was done, according to the plaintiffs, as evidence of their good faith in bringing this usury suit. By stipulation, the parties placed this money in the First National Bank of Raymondville, at interest, pending the outcome of this suit. The trial court in its judgment ordered that this money be repaid to the plaintiffs with the interest that had accrued while on deposit at the bank. The trial court disallowed the overpayments made by the plaintiffs from the time the note was extinguished (by the application of interest to principal) to the date suit was filed. This amounted to $8,558.40, which is the subject of plaintiffs' cross point on appeal.

The defendants filed a motion for judgment non obstante veredicto. This was overruled by the trial court. The defendants did not file a motion for new trial but appeal here solely upon the trial court's alleged error in failing to grant them judgment as a matter of law. The defendants advance seven points of error on appeal.

These can be conveniently summarized as follows: 1) the evidence established that no usurious interest was charged, paid or received; 2) that since the plaintiffs elected to treat the August 31, 1959, payment in the amount of $4,150.00 as "interest", they cannot now attempt to have the same payment applied to principal; 3) that they cannot collect penalties since this is barred by the statute of limitations; 4) that when the original payee Mrs. Cherry died, no penalty could thereafter be collected; 5) that there was no evidence to support the jury's finding that Russell Cherry subsequently knew or learned that the original amount of the loan was $25,000.00.

The plaintiffs contend that the original note was usurious as a matter of law, and that this usury extended into all of the subsequent renewals. They argue that either as a matter of law, or by their election during the trial of the suit, the first payment on the note of $4,150.00 (interest), was applied automatically to discharge a portion of the original principal indebtedness with the result that the second note and all subsequent renewal notes were usurious. They say by such election and application, the second note in the amount of $25,000.00 was really for only $20,850.00, ($25,000 less $4,150.00). Therefore they contend that the 10% paid on the $25,000.00 was usurious interest since they actually only owed $20,850.00 on principal. By such contention, the plaintiffs say that they are entitled to double the amount of interest paid by them during the last two year period preceding the time they filed their suit (in the amount of $5,920.00) and attorneys fees (in the amount of $2,960.-00); that they are entitled to judgment extinguishing the balance left due and owing on the subject note (in the amount of $16,300.00) and accrued interest (in the amount of $1,630.00) due on such note at the time suit was filed; and, by cross point, they say they are entitled to all of the overpayments made by them between

1. Plaintiffs and Defendants agreed that the two year statute of limitations was applicable in this case.

the time the principal of the note was fully paid (by the application of all prior interest payments to principal) until suit was filed (in the amount of $8,558.40); for a total of $35,368.40.

The defendants contend that because the parties designated the 1959 payment of $4,150.00 as "interest", such designation amounted to an election at that time to forever treat it as interest, which now bars its application to principal. They argue that since the first payment was not designated or used by the parties to discharge a portion of the principal, and since the renewal of the loan as evidenced by the second note was for the exact amount borrowed (i. e., $25,000.00), no usurious interest was then or thereafter charged or collected. They say that the second note and the renewal notes were, in effect, a novation, purged of the usury; that the statute of limitations has run against the $4,150.-00; and that they are entitled to the balance due on the last note in the amount of $16,300.00, plus interest of $1,630.00, and foreclosure of their deed of trust lien. We disagree with some of the contentions of both parties and with a portion of the result reached by the trial court in its judgment.

■ The question of whether or not the second new note was a novation and therefore was purged of its usurious taint was a fact question. Wallace v. D. H. Scott & Son, 133 Tex. 293, 127 S.W.2d 447 (1939). There was certainly evidence in the record that would have supported a jury issue on this determination. However, since the defendants did not request such an issue and elected to appeal on a no evidence contention, we must view the evidence in the light most favorable to the trial court's judgment.

■ The jury's answer to the first special issue finding that only $25,000.00 was loaned on the $27,250.00 note at 6% made the transaction usurious at its inception as a matter of law. The evidence supported the jury's findings. The second note, executed in September of 1959, was secured by a deed of trust lien on the same property covered by the first note. The renewal deed of trust recited that "the above note (second note dated September 27, 1959) is given in renewal and extension of unpaid balance in the original principal sum of $27,250.00 (the first note) described in the deed of trust dated August 28, 1959, . . . ." This evidence, standing alone, tainted the entire transaction including the renewal notes. There was no novation.

■ All contracts for a greater rate of interest than 10% per annum are deemed usurious. Article 16, Section 11, Texas Constitution, Vernon's Ann.St.;[2] Temple Trust Co. v. Moore, 133 Tex. 429, 126 S.W.2d 949 (1939); Temple Trust Co. v. Haney, 133 Tex. 414, 126 S.W.2d 950 (1939). Any written contract which provides directly or indirectly for a greater rate of interest than 10% shall be void and of no effect for the amount of the interest only. The principal sum of the contract may be received and recovered, however. (Article 5071, Revised Statute 1925)[3] Since the particular original note was usurious, its taint of usury extends to and affects all subsequent renewals. First Nat. Bank of Montague v. Waybourn, 81 Tex. 57, 16 S.W. 554 (1891); Wallace v. D. H. Scott & Son, 133 Tex. 293, 127 S.W.2d 447 (1939). The interpretation of this statutory law by the courts leaves the renewal notes as though they did not stipulate for any interest at all. Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.2d 942 (Tex.Comm'n.App.1935, opinion adopt-

2. (Amended in 1960, but amendment not applicable here)

3. Articles 5071 and 5073, Revised Statute of 1925, were in effect at the time the parties en-

tered into the original contract. However, both articles have been subsequently amended twice since that time: in 1963, and in 1967— All reference to Articles 5071 and 5073 in this opinion are to Rev.Stat.1925.

ed). In a suit for penalties, the inquiry under Article 5073[4] is whether there has been *"received or collected"* upon the contract within the two years before the filing of the suit, "a greater rate of interest than ten per cent". Article 5073, (Revised Statute 1925) is available to a borrower only when he has in fact paid, and the lender has in fact received, in the years in question, interest in excess of 10% for such year. Jennings v. Texas Farmers Mortg. Co., 124 Tex. 593, 80 S.W.2d 931 (Tex. Comm'n.App.1935, opinion adopted).

◼◼ Where payments are made on a debt that is usurious without specific application by either the debtor or creditor, the parties may apply such payment to that part of the debt which the debtor is legally bound to pay. This is ordinarily the sum lent or so much thereof that remains unpaid. Where the debtor elects to recover his statutory penalty even though the principal or a part of it is unpaid, he may offset the penalties against the principal. "Of course he is not entitled to resort to both remedies, that is, the application to the principal and the collection of penalties, on account of the same payments of interest." Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.2d 939 (Tex.Comm'n.App. 1935, opinion adopted). Robertson v. Connecticut General Life Ins. Co., 140 S.W.2d 936 (Tex.Civ.App.—Waco 1940).

◼ The first question we address ourselves to is whether the first interest payment was applied automatically to the reduction of the principal indebtedness at the outset, or later, by election, so as to enable all subsequent interest payments to be usurious. "Where the debtor executes a renewal note (in this case the second note) including therein the full amount of principal of the former obligation, (i. e., $25,000.00) he elects to treat prior payments as interest and waives the right to have them applied on the principal of the new note." 91 C.J.S. Usury § 92, page 676, citing Robertson v. Connecticut General Life Ins. Co., supra. It was said in Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.2d 939, Comm'n of Appeals, opinion adopted, 1935:

" . . . it is not entirely accurate to say, since the enactment of the penalty statute in 1892, that payments of interest on a contract affected with usury are by law applied to the principal. The borrower is entitled to have them so applied if he desires it, but he may prefer to sue for penalties under article 5073 on account of such payments.

\* \* \* \* \* \*

Plaintiffs in error's contention is faulty in its assumption that payments of interest become payments of principal because they may be applied to the principal. They are still payments of interest, which may or may not be applied to the principal."

\* \* \* \* \* \*

"The law does not automatically convert payments of usurious interest into payments of principal, but merely gives the borrower the right to have them so applied." Temple Trust Co. v. Haney, 103 S.W.2d 1035, 1040 (Tex.Civ.App.—Austin, 1937) (Tex.Sup.1937), opinion approved, 133 Tex. 414, 107 S.W.2d 368.

Plaintiff's contention that an election in 1971 during the trial of their lawsuit to

---

4. Article 5073, Revised Statute of 1925 reads as follows:

"Within two years after the time that a greater rate of interest than ten per cent shall have been *received or collected* upon any contract, the person paying the same or his legal representative may by an action of debt recover double the amount of such interest *from the person*, firm, or corporation *receiving the same*. Such action shall be instituted in any court of this State having jurisdiction thereof, in the count of the defendant's residence, or in the county where such usurious interest shall have been received or collected, or where said contract has been entered into, or where the parties who paid the usurious interest resided when such contract was made." (Emphasis supplied)

Article 5073 is now Art. 5069–1.06 (1967).

treat an interest payment made in 1959 as principal, so as to cause all subsequent payments of interest by them to be usurious, is untenable. The first payment was interest when paid and the parties treated the payment as "interest". This $4,150.00 is not entitled to be credited posthumously by the plaintiffs to Mrs. Cherry's notes (to make the subsequent interest payments usurious) after the plaintiffs had elected originally to have such payment received and applied as interest. Only Mrs. Cherry received this usurious interest payment, not the defendants who were her children. See Art. 5073 Revised Statute of 1925.[4] The plaintiffs could have recovered from Mrs. Cherry $8,300.00 (double the amount of the interest payment) within two years after they made the first usurious payment of $4,150.-00. (Art. 5073). But, since the plaintiffs designated the first payment to apply as interest, they cannot lay behind the log for 12 years before bringing suit and then attempt to use such first payment to restructure the entire loan transaction.

■ The Supreme Court in Stacks v. East Dallas Clinic, 409 S.W.2d 842 (Tex. Sup.1966) stated:

"Stacks next contends that in a usury case, payments are allocated to principal first and interest last; therefore, the last payments made by Stacks to the collection agency and by the agency to the Clinic should be regarded as the actual interest payments. This rule has no application to our case. Here, the advance payments made by Stacks to the Clinic were for interest. The Clinic told Stacks that the payments would not apply to reduce the principal of the notes. Likewise, Mrs. Stacks testified that she knew the first two advance payments were for interest. *Where the parties designate a payment as interest, then interest it will be.* Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.2d 939 (1935); Rosetti v. Lozano, 96 Tex. 57, 70 S.W. 204 (1902); Hamilton v. Bill, 90 S.W.2d 929 (Tex.Civ.App.1936, writ ref'd)." (Emphasis supplied).

We hold that where the parties designated the first payment interest, the same was not automatically applied to principal thereby making the subsequent interest payments usurious. The plaintiffs were not entitled to apply the first interest payment retroactively to the principal indebtedness so as to re-arrange it from the beginning to make the subsequent interest payments usurious. Stacks v. East Dallas Clinic, supra. This designation, however, did not prohibit the plaintiffs from subsequently applying this interest payment to the principal debt at time of suit.

■ Since the contract as to interest was void, the plaintiffs were entitled to apply the first as well as all interest payments subsequently made to the reduction of the unpaid principal or so much thereof that remained unpaid. This application of all interest payments to the principal indebtedness was sufficient to retire the principal debt, thereby resulting in no principal debt remaining. This also entitled the plaintiffs to a release of the deed of trust securing the obligation. Such relief is not affected by any statute of limitations. Adleson v. B. F. Dittmar Co., supra; 58 Tex.Jur.2d, Usury, § 44.

■ Now that the principal debt has been extinguished, we must dispose of plaintiffs' suit for penalty. Since its inception, the statute (Art. 5073) authorizing penalty has been strictly construed, because it is penal in nature. Temple Trust Co. v. Powers, 107 S.W.2d 734 (Tex.Civ.App.—Austin 1937, affirmed 126 S.W.2d 947 Tex.Sup.1939); Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.2d 942 (1935). It was undisputed that all interest payments made on the second note and the subsequent renewal notes thereafter were for 10% interest, the legal rate. Therefore, there have not been any payments of usurious interest since the first payment was made in 1958. The penalty statute, Article 5073, inquires as to whether there has been *received or collected* upon the contract within the two years before the

filing of the suit a greater rate of interest than 10%. Since such interest was not received or collected by these defendants, plaintiffs' suit for penalty fails. Temple Trust Co. v. Haney, 103 S.W.2d 1035 (Tex.Civ.App.—Austin 1937). affirmed 133 Tex. 414, 107 S.W.2d 368.

Plaintiffs' penalty action fails for still another reason. Since the principal debt has been extinguished (by the application of interest to principal) there was nothing to which to apply usurious interest. Therefore, there was no usurious interest paid within the two year period claimed by the plaintiffs. As a result, the penalty statute does not apply and the trial court's award of penalty on the interest paid and attorneys fees[5] must be disallowed.

Last, we are confronted with the plaintiffs' claim for excess interest payments made after the principal was fully extinguished. This recovery cannot be allowed. The trial court apparently disallowed the excess of the overpayments from the time the principal note had been extinguished (by application of previously paid interest to principal) up to two years before suit was filed, because of the two year statute of limitation period set out in Article 5073 as it was in effect at the time the contract was entered into by the parties. See Hockley County Seed Delinting, Inc. v. Southwestern Ins. Co., 476 S.W.2d 38 (Tex.Civ.App.—Amarillo 1971, n. r. e.). The plaintiffs, by cross point, contend that they are entitled to recover all of the payments of interest and principal made after the principal debt has been extinguished. In this regard they use an arbitrary date in January of 1967 where the accountants stated that the principal debt would have been paid by the application of all interest heretofore paid to the principal. However, this is not exactly correct.

All written contracts which directly or indirectly provide for a greater rate of interest than 10% are usurious. They are void and of no effect for the amount of interest only. The principal sum of money may still be recovered. Here, all of the plaintiffs' principal payments made prior to suit are to be applied to the principal debt, not just those up to January, 1967. Thereafter, all interest paid by the plaintiffs to the defendants and their predecessors, beginning with the first interest payment, should be applied to the principal debt to the extent that the same was left owing. But there cannot be any recovery for interest voluntarily paid by the plaintiffs after the principal indebtedness was thus satisfied. There is some indication that this overpayment could be recovered by the language stated in Adleson v. B. F. Dittmar Co., supra. However, a recovery of overpayment is not now allowed. Such recovery of overpayments has been changed by judicial evolution as is indicated by reading of the following cases in this order: Ingram v. Temple Trust Co., 108 S.W.2d 306 (Tex.Civ.App.—Austin 1937); Temple Trust Co. v. Hanly, 103 S.W.2d 1035 (Tex.Civ.App.—Austin 1937); Thompson v. Kansas City Life Ins. Co., 102 S.W.2d 285 (Tex.Civ.App.—Waco 1937, writ ref'd); and then Ingram v. Temple Trust Co., supra, on motion for rehearing. Ingram v. Temple Trust Co. was affirmed in Glenn v. Ingram, 133 Tex. 431, 126 S.W.2d 951 (1939). In accord is Eastern Mortgage and Securities Co. v. Collins, 118 S.W.2d 479 (Tex.Civ.App.—Galveston 1938 writ ref'd.).

It is settled now that a borrower who pays interest on a usurious contract is entitled to have all such payments credited upon principal. Where he brings himself within the provisions of Article 5073, he is entitled to recover the penalties therein provided. However, where he voluntarily pays this interest and principal, he cannot thereafter recover as overpayment of prin-

---

5. Article 5073, Revised Statute 1925, which was in effect at the time the parties entered into the contract, did not allow attorney fees.

See Hockley County Seed Delinting, Inc. v. Southwestern Ins. Co., 476 S.W.2d 38 (Tex. Civ.App.—Amarillo 1971, n. r. e.)

cipal the interest theretofore so voluntarily paid by him. Ingram v. Temple, supra. In the Ingram case, the court said: " . . . No question is made but that Ingram had voluntarily paid all interest up to the time he filed his suit. That interest he was entitled to have applied to a reduction of his principal still unpaid. But, *when the remaining principal is thus discharged the rule announced in the Thompson Case, supra, would, we think, become operative as to any such excess, and bar his recovery as overpayment of principal such excess interest theretofore voluntarily paid by him.*" (Emphasis supplied).

There is no question here, as there was no question in the Ingram case, that the plaintiffs had voluntarily paid all the interest up to the time they filed their suit. Under our holding herein, the plaintiffs are entitled to have applied to the reduction of the principal debt the amount still unpaid, to-wit: $16,300.00. However, when the remaining principal is thus discharged, by the application of the interest payments to the principal debt, the rule announced in the Thompson and Ingram cases, supra, became operative as to any such excess. This rule bars plaintiffs' recovery as to such overpayments. 91 C.J.S. Usury § 100, Extent of Recovery, p. 685. The amount of money paid into the registry of the court by the plaintiffs, under stipulation by the parties, is not affected by this holding.

This brings us to the proper disposition of this appeal. The trial court applied the interest payments paid by the plaintiffs to the principal debt left owing, until the same was extinguished. The trial court allowed penalty in double the amount of interest paid by the plaintiffs during the two year period preceding the filing of the suit. Additionally, the court allowed attorney fees in the amount of $2,960.00. The allowance by the trial court of the penalties and attorney fees was error requiring us to reverse the case. Rule 434, Texas Rules of Civil Procedure, provides that when the judgment of the trial court shall be re-

versed, the Court of Civil Appeals shall proceed to render such judgment as the court below should have rendered where the amount of damages has already been ascertained.

The plaintiffs admitted that the balance owed on the note at the time suit was filed was $16,300.00. The trial court was correct in applying interest paid by the plaintiffs to the extinguishment of the principal debt and in releasing the deed of trust liens heretofore existing against the lands owned by the plaintiff and described in the judgment. In this respect the judgment of the trial court is affirmed.

The judgment of the trial court recited that the plaintiffs had heretofore paid into the registry of the court the sum of $17,930.00 representing the amount left owing on the unpaid principal of the note in the amount of $16,300.00, together with accrued interest at the rate of 10% per annum in the amount of $1,630.00. By agreement of the parties hereto, this amount was placed on deposit with the First National Bank at Raymondville, at interest, according to a stipulation entered into by and between the plaintiffs and defendants. The trial court was correct in directing that said sum be repaid to the plaintiffs and ordering the First National Bank of Raymondville, Texas, to pay over to the plaintiffs the said deposit together with all interest accrued thereon and to issue its check in favor of the plaintiffs for this amount. In this particular, the judgment of the trial court is further affirmed.

As to the interest paid ($2,960.00) within the two year period prior to the time suit was filed, the trial court awarded as penalty, double the amount of the interest paid for a total amount of $5,920.00. As additional penalty, the trial court awarded attorney fees in the amount of $2,960.00 for a total penalty in the amount of $8,880.00 (double interest and attorney fees). In this respect, the trial court was in error. Insofar as the court awarded judgment of double the amount of interest paid and at-

torney fees, the same is reversed and here rendered that the plaintiffs take nothing as to this amount ($8,880.00).

Defendants' points of error are sustained insofar as they are consistent with the result reached in this opinion. All of the other points of error are overruled. The plaintiff's cross point is overruled.

The judgment of the trial court is affirmed in the part herein set out and reversed and rendered in part as here stated. Costs are allocated two-thirds to be paid by the defendants and one-third by the plaintiffs.

Affirmed in part, reversed and rendered in part.